CHALMERS SPENCE PATENT NON-CONDUCTOR CO. *v.* PIERCE and others.*

(*Circuit Court, E. D. Pennsylvania.*   August 15, 1881.)

1. PATENT—INFRINGEMENT—COVERING FOR BOILER.

Patent No. 55,598, for an improved mode of covering steam-boilers, consisting of a covering of felt, supported on an open metallic frame-work separated from the boiler by studs or struts, *held*, to be infringed by a covering of felt, supported on a metal jacket, so punched that it is full of V-shaped points, which separate it from the boiler.

Hearing on Bill, Answer, and Proofs.

This was a bill for an injunction against the infringement by defendants of letters patent No. 55,598, issued to John Ashcroft, under date of June 19, 1866, for an "improved mode of covering steam-boilers or pipes." Defendants denied the infringement. Plaintiff's invention consisted in covering steam-boilers with a covering of felt, supported on a frame-work of wire or small iron bars, forming an open frame-work removed a short distance from the boiler and supported by studs or struts. Defendants' invention consisted of a covering of felt, supported on a sheet-iron metal jacket, so punched that it was full of V-shaped points, which touched the surface of the boiler and held the jacket equidistant from the surface.

*E. B. Barnum*, for complainant.

*J. R. Sypher*, for respondents.

BUTLER, D. J.   In a former suit (against Camp and others) the court passed upon the plaintiff's patent, and held it to be valid. The only question now involved is that of *infringement;* and this was decided against defendant on the motion for preliminary injunction. Comparing the two devices, we found no material difference between them, and *McKennan*, C. J., then delivered the following opinion :

"There is but a single question, and a very narrow one, involved in this hearing. It is admitted that this patent is valid, and that in so far as it was rendered valid by an invention of John Ashcroft, it is not in question upon this motion. It is alleged, and has been argued here, that John Ashcroft's invention consisted in the devising of this jacket and its support upon the outer surface of the boiler to be covered. Now the patentee says this 'frame-work, c, can be easily constructed or built up of wire, small iron bars, or gas-pipes, unwelded, forming an open frame-work with meshes of the size of the metallic bars used, for the size of the meshes must depend upon the size of the boiler, or pipe, being a matter of mere judgment.' The claim of the patent refers to the construction and operation of this jacket, as it is to be constructed and operated, substantially as described in the patent; that is to say, an open frame-work supported on the boiler by appropriate studs. 'This frame-work must be supported by suitable studs, or struts, which can be constructed in

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

sections so as to be easily removed.' What is contemplated is just this, an open jacket, supported by suitable studs, or struts. That is one form in which the invention is to be carried into effect, and which it is necessary to describe in order to make his patent valid, but he is not confined so as not to be able to use any other form which is not substantially different from that, nor is he confined to any method of attaching the struts other than the one that is shown in the patent; that is not made an essential part of the invention at all. The object is to keep it off of the boiler, and that is to be accomplished by the use of struts adapted to that purpose. But the patentee is not confined to any particular mode of attachment on the jacket; so that the question to be considered comes down to this, which has been repeatedly said during the progress of the argument: Whether the alleged infringing device is substantially different from the one embraced in the patent, and that must be determined with reference to the function to be performed, or the mode in which that function is effectuated. What is the difference? Here you have a jacket with quite a large number of perforations in it. I do not profess to be a skilled mechanic, but it does seem to me to be obvious that all these struts are not necessary to furnish a support to the jacket.

" This [indicating] is supported without anything like the number of struts that are in this model [indicating.] Why are so many put in this model [indicating]? It seems to me that it is obviously to make available an advantage which would be derivable from the perforations of this material; or, in other words, to make available whatever would be the result obtained from the meshes or the perforations by the punching of more holes than are actually required to furnish a support to this jacket. Then you have the perforated, or meshed jacket; which is supported by struts. As I have already remarked, the form or mode of attaching these struts to the jacket is not made an essential part of the patent. There must be struts, but they are to be appropriately attached. Now, instead of being riveted or screwed on, they are punched out of the material itself—instead of taking a separate piece of material and riveting it on, the strut is made by a punch in the material of the jacket, so that you have the same function and precisely the same mode of operation. You have the jacket resting upon the boiler and supported by it in precisely the same way and by the use of precisely the same means. What difference is there in the mode of operation? There is no earthly difference except as to the manner in which the struts are made. There is no other difference about it. The patentee has not limited himself to any particular mode of making these struts. They are to be applied with reference to the function to be performed; that is, that they shall support the jacket upon the boiler. That is what is done here, and that is all that is done, in so far as the mode of operation is concerned. As we have already said, you have the perforations or the meshes, and these holes, which operate precisely in the same way, so that guided by our own eyes we have no doubt that there is no fundamental difference between these devices, and we therefore grant the injunction."

Nothing material has been developed since the foregoing views were expressed. An elaborate and able argument has been presented

to show that the plaintiffs' claim and patent should be confined to the "metallic frame-work." But adopting this view would not help the defendants. The fact that they have copied the "metallic frame-work," would remain. We say *copied*, because this, in effect, is what they have done. There is no material difference between the two devices. The mechanical difference in *construction*, is unimportant. When constructed,—considered as instruments for the use contemplated,—they are substantially identical.

The meshes, or open spaces, in the "metallic frame-work," are covered by the claim, though the patent may not be confined to them. The method of construction specified produces meshes, and the model filed exhibits them. That their uses are not specified is unimportant. The plaintiffs have the benefit of all uses to which they can be applied. The ingenious argument based on a different view of the patent thus loses its effect.